IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| **JEUNESSE GLOBAL HOLDINGS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**MARK BERRY, JUICYACAI LLC, and MOXIIIE LLC,**<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFAULT JUDGMENT<br><br>Case No. 2:18-cv-513-CW<br><br>Judge Clark Waddoups |

This matter is before the court on Plaintiff Jeunesse Global Holdings, LLC's ("Jeunesse") Motion for Default Judgment. (ECF No. 22.) On January 28, 2022, the court held an evidentiary hearing and heard oral argument on the motion. After the hearing, the court requested that Plaintiff submit a memorandum regarding damages and personal jurisdiction. (ECF No. 26.) Plaintiff then filed the supplemental memorandum on February 25, 2022 (ECF No. 27) and filed the related exhibits on May 18, 2022. (ECF No. 29.) After considering the briefing and arguments, the court grants Jeunesse's Motion for Default Judgment for the reasons set forth below.

## I.  LEGAL STANDARDS

When considering the sufficiency and nature of the evidence presented in support of default judgment, "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Penpower Technology Ltd. v. S.P.C. Technology*, 627 F. Supp. 2d 1083, 1088 (2008) (N.D. Calif.) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *see also Boland v. Elite*

*Terrazzo Flooring, Inc.*, 763 F. Supp. 2nd 64, 68 (D.D.C. 2011) ("As a result of the entry of default, the court construes all well-pleaded allegations in the complaint as admitted."); *United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006) (unpublished) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (internal quotation and citation omitted).

## II. BACKGROUND

Jeunesse's claims in this matter involve the sale and marketing of MonaVie juice, a popular juice product which is made from a blend of 19 different fruits including the acai berry, and which is known for its antioxidant properties. In 2015, Jeunesse became the successor in interest to all assets of MonaVie, a former Utah based business, and Jeunesse has continued to market and sell MonaVie juice since that time. (*See* Comp., ECF No. 2 at ¶ 9).

From April 2007 through November 13, 2017, Defendant Mark Berry was an independent Distributor of MonaVie juice, and was subject to all the terms and conditions of various contracts, including the MonaVie Distributor Agreement and Black Diamond Website Agreement. (ECF No. 2 at ¶¶ 10-15). In November 2017, Jeunesse terminated Mr. Berry's MonaVie distributorship after learning in October 2017 that Mr. Berry was breaching the terms of his contracts by improperly marketing and selling MonaVie juice and other MonaVie products on a website, http://juicyacai.com, which was associated with a competitor product known as Moxiiie juice. (ECF No. 2 at ¶¶ 16-40).

Jeunesse began to learn of incidents where Jeunesse customers were going to juicyacai.com and attempting to purchase MonaVie juice products from what they believed to be an authorized MonaVie dealer. *Id*. Instead, the customers were ultimately deceived into

purchasing Moxiiie juice products, which are completely unaffiliated with Jeunesse or MonaVie, thereby depriving Jeunesse of countless sales opportunities and lost income. *Id*. When Mr. Berry refused to comply with Jeunesse's written demands to stop using any marketing that involved the name, logos, and images of MonaVie products on the juicyacai.com website in efforts to sell Moxiiie products, Jeunesse initiated this litigation against Mr. Berry and the related involved entities.

After being properly served with a Summons and Complaint, Defendants failed to appear or defend in any way. A Certificate of Default was entered by the Clerk of the Court on August 12, 2019. (ECF No. 17.) Jeunesse subsequently filed a Motion for Default Judgment on November 15, 2021, and again, Defendants failed to respond. In the motion, Jeunesse seeks Default Judgment in the amount of $316,774.50.

### III. DISCUSSION

**A.  Subject Matter Jurisdiction and Personal Jurisdiction**

As an initial matter, the court must ensure that jurisdiction exists to enter default judgment. "[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). "In reviewing its personal jurisdiction, the court does not assert a personal defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment. *Id*.

In its Complaint, Plaintiff alleges claims under 15 U.S.C. § 1125(a) and 15 U.S.C. § 1114 et seq., which are both causes of action pertaining to trademark violations. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), which provides that "[t]he district courts

shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

In addition, this court has specific jurisdiction over the Defendants. To establish specific jurisdiction over an out-of-state defendant, it must be established that "(1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'" *Xmission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020) (quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 472 (1985)). In *Xmission*, the Tenth Circuit further emphasized that the "arising-out-of" component of the test requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum." *Xmission*, 955 F.3d at 840.

The "purposeful direction" or "purposeful availment" requirement "requires that a defendant have deliberately . . . engaged in significant activities within the forum State or deliberately directed its activities at the forum State, so that it has manifestly availed [itself] of the privilege of conducting business there." *Id*. (internal quotation and citation omitted). This "ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . the unilateral activity of another party or a third person . . . or the mere foreseeability that its actions may cause injury in that jurisdiction." *Id*. at 840-841 (internal quotation and citation omitted).

In a recent decision issued by another judge in this district regarding personal jurisdiction in the context of a motion for default judgment, Judge David Barlow stated:

> As an initial matter, the court must ensure that jurisdiction exists to enter default judgment. When entry of a default judgment is sought against a party who

> has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties. In reviewing its personal jurisdiction, the court does not assert a personal defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment.
>
> * * *
>
> Concerning personal jurisdiction, Plaintiff submitted proof of service on June 16, 2020. Specifically, the process server certified delivery of the summons, complaint, and exhibits on Defendant's agent for service on the same date. Additionally, Defendant is subject to jurisdiction in Utah: pursuant to a contract containing a Utah governing law and jurisdiction provision; having transacted business within Utah; causing injury within Utah; and having sufficient contacts with the Utah such that the maintenance of the suit in this court does not offend traditional notions of fair play and substantial justice.

*Dyno Nobel, Inc. v. Central Valley Tank of California, Inc.*, 2021 WL 1293325 *2-3, Case No. 2:20-cv-00357-DBB-CMR (D. Utah April 7, 2021) (internal quotation marks and footnotes omitted).

In the present case, Jeunesse has pleaded sufficient facts in the Complaint and presented additional evidence at the January 28 hearing for this court to conclude that personal jurisdiction is proper over the named Defendants in this case. Specifically, the facts that have been accepted as true for purposes of default judgment include the following:

1. In 2015, Jeunesse became the successor in interest to all assets of MonaVie, a former Utah based business, including its popular MonaVie juice product. (Complaint at ¶ 9).

2. Defendant Mark Berry, through a business he founded, Defendant JuicyAcai LLC, worked as an independent Distributor of MonaVie from April 2007 through November 13, 2017. (Compl. at ¶¶ 2, 4, 10; Additional evidence was presented at the January 28 hearing through the testimony of Tina Murphy Richmond ("Ms. Richmond") and

      computer records showing Mr. Berry's distributorship established in the name of his business, JuicyAcai.)

3. Sometime in 2014 or 2015, prior to Jeunesse's acquisition of MonaVie, Mr. Berry requested and was granted approval from MonaVie to create a website, juicyacai.com, for the purpose of marketing and selling MonaVie juice as an authorized MonaVie distributor. (Compl. at ¶ 11).

4. In order to obtain MonaVie's approval to market and sell MonaVie juice on his juicyacai.com website, Mr. Berry was required to attain the elite rank of "Black Diamond" within MonaVie's network of Distributors and was required to enter into MonaVie's standard "Black Diamond Website Agreement" which specified the permissible scope, content, and use of MonaVie name, trademarks and logos on any Distributor website. (Compl. at ¶ 12) (An exemplar copy of MonaVie's Black Diamond Website Agreement was attached to the Compl. as Ex. 1.)

5. While Mr. Berry's executed copy of the Black Diamond Website Agreement has not been located, Ms. Richmond testified at the January 28 hearing that Mr. Berry did, in fact, sign a copy of the Black Diamond Website Agreement and was permitted by MonaVie to operate his website, including the marketing and sale of MonaVie juice on the website, pursuant to the terms of that Agreement.

6. The Black Diamond Website Agreement expressly states that it shall be governed by Utah law, that the Parties agree to submit to the jurisdiction of the Utah federal and state courts, and that the prevailing party shall be entitled to recover costs and attorneys' fees in any action brought to enforce a Party's rights under the Website Agreement. (Compl. at ¶ 15; *see also* Ex. 1 to Compl. (the Agreement) at p. 7.)

7. In November 2017, Jeunesse terminated Mr. Berry's distributorship after discovering that Mr. Berry was violating the terms of the Black Diamond Website Agreement by improperly marketing and selling MonaVie juice on his juicyacai.com website together with competitor products manufactured or distributed by defendant Moxiiie LLC, which was also founded by Mr. Berry. (Compl. at ¶¶ 3-4, 16-33).

8. The claims stated in Jeunesse's Complaint are based on allegations that Mr. Berry, individually and through his businesses JuicyAcai and Moxiiie, has breached the terms of the Black Diamond Website Agreement and has committed various advertising and trademark violations. Specifically, Jeunesse alleges causes of action against Defendants including (1) False Advertising/False Designation of Origin; (2) Breach of Contract; (3) Trademark Infringement; and (4) Tortious Interference. (ECF No 2).

9. Defendants Juicyacai LLC and Moxiiie LLC were properly served with Summonses and copies of the Complaint on July 3, 2018 (ECF No. 8, 9), and Mark Berry was properly served with a Summons and a copy of the Complaint on July 15, 2018. (ECF No. 10.) Defendants have failed to appear or otherwise defend themselves in this litigation.

10. Additional evidence was presented at the January 28, 2022, hearing demonstrating that Mr. Berry's violations and improper conduct through JuicyAcai and Moxiiie had continued at least up to that time and has included ongoing sales of product to consumers in Utah, including the fulfillment of a recent order that was made by a Jeunesse representative in Utah, with product being shipped by Defendants to Utah in fulfillment of that order.

In summary, the facts demonstrate that Mr. Berry and JuicyAcai entered into a business agreement with a Utah-based business, MonaVie, which allowed them to market and sell MonaVie's products, including its popular juice product. Furthermore, the facts show that Mr. Berry and JuicyAcai entered into an Agreement wherein they expressly agreed to submit to the jurisdiction of the state and federal courts in Utah, and that any claims arising out of their Agreement with MonaVie would be governed by Utah law. The claims at issue in this case show that Mr. Berry, individually and through his businesses JuicyAcai and Moxiiie, has violated the terms of his Agreement with MonaVie and has committed other advertising and trademark violations that subject Defendants to liability. Finally, the facts and evidence presented demonstrate that Defendants' improper conduct has included sales to Utah consumers as well as damages sustained by Jeunesse in the state of Utah.

Based on the above facts and evidence which are accepted by the court as true for purposes of default judgment, the court is persuaded that Defendants had sufficient minimum contacts with the state of Utah that they could anticipate being subjected to litigation in this state, especially when they accepted and benefitted from an Agreement that expressly subjected them to the jurisdiction of this court. Therefore, the court finds that maintaining this action in this court does not offend traditional notions of fair play and substantial justice and that this court has jurisdiction over the subject matter and the parties.

**B. Damages**

When considering claims for default judgment, courts have "considerable latitude in determining the amount of damages." *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir 1993). To fix the amount, the court may conduct a hearing. Fed.R.Civ.P. 55(b)(2). The court, however, is not required to do so "as long as it ensure[s] that there [is] a basis for the damages

specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.,* 109 F.3d 105, 111 (2d Cir.1997). In the instant case, the court held an evidentiary hearing on January 28, 2022. Plaintiff acknowledged that the precise impact and damages caused by Defendants' ongoing misconduct is admittedly difficult to calculate without having had the benefit of discovery with Defendants and their business records. But despite this difficulty, Jeunesse has presented the court with a reasonable basis for determining its damages based on the limited evidence that is available.

Specifically, Jeunesse has presented the court with reliable, publicly available evidence showing the amount of traffic generated by Defendants website where the improper marketing of MonaVie products had continued up to the date of the hearing. Jeunesse has also presented to the court pricing information of products that are being improperly marketed and sold by Defendants, and the losses that would be sustained by Jeunesse for each lost sale of its MonaVie juice product.

Based on the evidence showing the volume of customers visiting Defendants' website and the actual pricing of the products at issue, Jeunesse seeks damages based on a conservative realization rate of 2.5%. Additionally, rather than seeking damages over the entire 4+ year period during which Defendants have continued their improper and ongoing conduct, Jeunesse seeks damages based on a limited two-year period. Jeunesse submits—and the court agrees—that its proposed method of calculating damages is more than reasonable in light of the manner in which Defendants have handicapped Jeunesse's ability to pursue its claims in this matter. The court finds that the damages requested by Jeunesse fall well within the court's "considerable latitude" for calculating damages.

Jeunesse seeks Default Judgment in the amount of $316,774.50, which includes $302,304 in damages, $13,800.50 in attorneys' fees, and $670 in costs. The following facts support the default judgement requested by Jeunesse:

1. Publicly available website "traffic" data for juicyacai.com shows that for the 6-month period of December 2018 - May 2019, the juicyacai.com was receiving approximately 3,200 visits per month. (*See* Traffic Analytics report for juicyacai.com, ECF No. 22-1.)

2. As of the date of filing the Motion for Default Judgment in November 2021, a click on the link to the http://juicyacai.com website shows that Defendants were still falsely holding themselves out as a "Master Distributor" of MonaVie juice, and product images are still being used to market both MonaVie and Moxiiie products side by side in a confusing and misleading manner.

3. MonaVie juice is commonly sold in single boxes that include 4 bottles of juice. As shown on Jeunesse's website (https://www.jeunesseglobal.com/en-US/monavie), the retail price for a box of MonaVie juice at the time of filing was $184.95. The product is more commonly sold, however, to existing customers at a "Preferred Customer" price which was $157.45 per box.

4. The http://juicyacai.com website lists the same boxed product with 4 bottles of MonaVie juice for $148.00, although Jeunesse believes that any attempts to purchase the MonaVie juice on juicyacai.com are then steered towards purchasing the similarly marketed Moxiiie products.

5. Assuming 2.5% of all visits resulted in a lost sale to Jeunesse, the total amount of lost sales per month would have been 80 sales per month (3200 sales x .025 = 80 sales).

        Using the "Preferred Customer" price of $157.45 per 4-bottle box, the total lost sales per month would be $12,596/month ($157.45 per box x 80 sales = $12,596 lost each month). While Defendants' misconduct has now continued for over four years (October 2017- November 2021), Jeunesse seeks an award of damages for only a 24-month period. Thus, the total amount of damages is $302,304.00 ($12,596 in lost sales per month x 24 months = $302,304.00).

6. One of the contracts at issue in this case, the Black Diamond Website Agreement, includes a provision that states, "[i]n any action or proceeding to enforce the rights under this Agreement, the prevailing Party shall be entitled to recover its costs and attorneys' fees." (*See* ECF No. 2, Ex. 1 at p. 27 of 34 (provision 16(f).)

7. The attorneys' fees incurred by Jeunesse in its efforts to enforce compliance by Defendants and pursuit of this litigation up through the filing of this Motion total $13,800.50. The filing fees and service costs incurred in the commencement of this litigation were $670.00.

8. Regarding Attorney fees, Jeunesse did not provide evidence of the billing rates or attorney time spent in its efforts to enforce compliance by Defendants prior to filing the instant action and in pursuing this action from June 28, 2018, through the present time. The court, however, is satisfied that the requested attorneys' fees are reasonable. It is clear from the docket that the attorneys prepared and filed a Complaint (ECF No. 1), filed a status report on June 7, 2019 (ECF No. 12), filed a Motion for Default Certificate (ECF No. 13), responded to an Order to Show Case on October 14, 2021 (ECF No. 20), filed a Motion for Default Judgment on November 15, 2021 (ECF No. 22), prepared for and attended an evidentiary hearing on January 28, 2022 (ECF No. 26), prepared a

Supplemental Memorandum on February 25, 2022 (ECF No. 27) and responded on May 18, 2022, to a request from the court to file the exhibits used at the hearing (ECF No. 28, 29.) Even assuming a low billing rate for Salt Lake City of $250/hour, the court is satisfied that counsel would have spent well over 55 hours ($250/hour x 55 hours = $13750) on this litigation—and that assumption does not include any time spent in trying to enforce compliance and avoiding a lawsuit. Therefore, the court finds Jeunesse's request of $13,800.50 in attorney fees to be reasonable.

9. Jeunesse's requested costs in the amount of $670 are also reasonable. The filing fee for the Complaint was $400, and award of $270 for costs to serve the three Defendants is reasonable.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiff Jeunesse's Motion for Default Judgment (ECF No. 22) is GRANTED. The court awards damages in the amount of $302,304.00, attorneys' fees in the amount of $13,800.50, and costs in the amount of $670, for a total judgment of $316,774.50, which is awarded to Jeunesse Global Holdings and against Mark Berry, Juicyacai LLC, and Moxiiie LLC, jointly and severally. Post-judgment interest will accrue at the federal rate under 28 U.S.C. § 1961. The court will enter a separate judgment.

DATED this 19th day of December 2023.

BY THE COURT:

_____
Clark Waddoups
United States District Judge